UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| AMANDA FRANKLIN, | Civil Action No: |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| GENTECH SCIENTIFIC LLC, CONQUER SCIENTIFIC LLC, PURITY SCIENTIFIC LLC, LAKELET CAPITAL LLC and YVETTE PAGANO, an individual, | **JURY TRIAL DEMANDED** |
| Defendants. | |

-------------------------------------------------------------x

Plaintiff Amanda Franklin ("Plaintiff" or "Franklin"), hereby alleges, by and through her counsel, Tully Rinckey, PLLC, as against Defendants Gentech Scientific LLC, Conquer Scientific LLC, Purity Scientific LLC, Lakelet Capital LLC, and Yvette Pagano (collectively, "Defendants") as follows:

**PRELIMINARY STATEMENT**

1. It is patently unlawful to demote or terminate a mother for giving birth or taking maternity leave. Having a baby should not come at the cost of the mother's career. Here, the Defendants are liable for all of the above. They started denying vital accounts and leads to Plaintiff as soon as they found out about her pregnancy and continued this practice after she returned from maternity leave.

2. Worse still, within four (4) months after returning from maternity leave, Defendants demoted Plaintiff to a lower position within the company and reduced her salary by 50%. This conduct constitutes discrimination based on gender and pregnancy.

1

3. Plaintiff complained about the discrimination she was experiencing during her pregnancy and when she returned from maternity leave, but Defendants did not address her concerns or engaged in any remedial action. Instead, Defendants retaliated against Plaintiff and continued to deny her leads, accounts, and opportunities.

4. Defendants' actions expressly violated multiple statutes, including the Pregnancy Discrimination Act ("PDA") and the New York States Human Rights Law ("NYSHRL").

## NATURE OF THE CASE

5. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the New York State Human Rights Law, New York State Executive Law §§ 296, et seq. ("NYSHRL"). She seeks damages to redress the injuries she has suffered as a result of being discriminated and retaliated against by Defendants, solely due to her pregnancy, and her sex/gender.

## JURY DEMAND

6. Plaintiff requests a jury trial on all claims so triable by jury.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1341 as this action involves federal questions regarding the deprivation of Plaintiff's rights under federal law. This Court has supplemental subject matter jurisdiction over Plaintiff's related state and local law pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district. Further, both Plaintiff and one of the Defendants have a primary place of residence within this district. Therefore, venue is proper.

## ADMINISTRATIVE PROCEDURES

9. On July 28, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") as amended by the Pregnancy Discrimination Act of 1978 ("PDA").

10. On September 23, 2022, Plaintiff received a Determination and Notice of Rights from the EEOC, setting forth her rights to bring this claim under federal law. (See Exhibit A).

11. Plaintiff has complied with any and all other prerequisites to filing this action.

## PARTIES

12. At all times relevant herein, Plaintiff was a resident of Chaffe, New York, in the County of Erie, from July of 2020 to June of 2022, and a resident of Freedom, New York, in the county of Cattaraugus, from June of 2022 to the present.

13. Plaintiff met the definition of an "employee" under all applicable statutes.

14. Defendant GenTech ("GenTech") was and is a domestic limited liability corporation, located at 23 Mill Street Arcade, New York 14009, and is duly organized and existing under the laws of the State of New York. At all relevant times, GenTech has met the definition of an "employer" of Plaintiff under all applicable statutes.

15. Defendant Conquer Scientific ("Conquer") was and is a foreign business limited liability corporation, located at 12778 Brookprinter Place, Poway, California. At all relevant times, Conquer has met the definition of an "employer" of Plaintiff under all applicable statutes.

16. Both companies, GenTech Scientific and Conquer Scientific, are held by Defendant Lakelet Capital LLC, under Purity Scientific, LLC ("Purity").[1]

---

[1] See https://purityscientific.com/ (last viewed 12/21/2022)

17. Defendant Lakelet Capital LLC, was and is a domestic limited liability corporation, located at 341 Linwood Avenue, Buffalo, NY 14209, and is duly organized and existing under the laws of the State of New York.

18. Purity d/b/a Lakelet Capital LLC has met the definition of an "employer" of Ms. Franklin under all applicable statutes.

19. Purity, GenTech, and Conquer are referred to collectively herein as "the Corporate Defendants"

20. The Corporate Defendants are united in interest. Their website states in relevant part as follows: "Consolidated under Purity Scientific, GenTech and Conquer are now headed by one executive management team and offer a combined inventory and other shared resources to better serve our customers."[2]

21. Purity, GenTech, and Conquer were joint employers to Ms. Franklin.

22. During all relevant times, Ms. Franklin's employment duties included tasks for Purity, GenTech, and Conquer.

23. At all relevant times herein, the Corporate Defendants employed more than fifteen (15) persons.

24. Mike Lippa ("Lippa") is the CEO of GenTech and Conquer.

25. Defendant Yvette Pagano ("Pagano") is the COO of GenTech and Conquer.

26. Upon information and belief at all relevant times, Defendant Pagano was a resident of the State of New York, in the County of Monroe.

27. Defendant Pagano was Ms. Franklin's s supervisor during all relevant times.

---

[2] See https://gentechscientific.com/about/ (last viewed 12-21-2022); https://purityscientific.com/ (last viewed 12-21-2022)

4

**FACTUAL ALLEGATIONS**

28.     Ms. Franklin commenced her employment with the Corporate Defendants on November 13, 2013. At the time, her role was an Administrative Assistant.

29.     Ms. Franklin excelled in her role, and, as a result, she was consistently promoted within the company.

30.     At all relevant times, Defendant GenTech Scientific, LLC ("GenTech") markets refurbished instruments for laboratories and also offers installation, training, and maintenance and repair services to help scientists, universities, and corporations further their research.

31.     On or about January 2021, Ms. Franklin held the role of Sales Consultant and Team Lead, and she was earning approximately $100,000. This role included, inter alia, generating sales on behalf of the Corporate Defendants, and developing and maintaining client relationships. In this role, Ms. Franklin successfully developed relationships with clients, who began to purchase equipment and services from GenTech and Conquer Scientific on a consistent basis.

32.     The Corporate Defendants' client-base is huge and can be described as any entity that needs analytical lab equipment, including but not limited to, government-run labs, university labs, and drug testing companies

33.     One of the main duties of Ms. Franklin's s position involved following up on potential client leads that were distributed by the main office. On or about March 2021, these leads were distributed to three people within the company: Alexis Howell ("Ms. Howell") and Laura Pfister ("Ms. Pfister").

34.     Importantly, Ms. Franklin was the most senior employee handling the leads by at least five (5) years. Ms. Howell had joined the company on or about 2020, and Ms. Pfister had

joined the company around the time Plaintiff left for maternity leave (summer 2021). Since Ms. Pfister was new to the company, and was still acclimating, at the outset she received less leads.

***Defendants Discriminated Against Ms. Franklin as a Result of Her Pregnancy By Denying Her Leads and Opportunities, and Ultimately Demoting Her.***

35. In or around January or February 2021, Ms. Franklin notified the Corporate Defendants of her pregnancy, which was high risk. At that time, Ms. Franklin advised the Corporate Defendants that she expected to give birth on or about August 2021.

36. Almost immediately, Ms. Franklin noticed that she was being treated in a discriminatory manner as a result of being pregnant. Specifically, her leads were still being assigned to her colleagues which significantly undercut her role in the company, as it denied her the ability to form new client relationships. Ms. Franklin immediately pointed it out to Pagano, but there was no response.

37. Defendants allowed Ms. Franklin to work from home during some time of her pregnancy, which was greatly appreciated. However, this did not justify Defendants' discriminatory conduct, which consisted in denying her leads which then prevented her ability to develop new accounts and new client relationships. Ms. Franklin raised this issue in a May 17, 2021, email to Pagano, in which she wrote: "Not only am I not receiving calls that are people looking specifically for me at that time, but I am not getting any live lead calls either… I am just concerned again that people[']s unfair assumption is that because I am at home that I am not working and that is 10000% not the case." There was no response.

38. On or about July 7, 2021, Pagano acknowledged that she was not giving leads to Ms. Franklin, as Ms. Franklin was experiencing pregnancy complications.

39. In response, Ms. Franklin sent an email to Pagano on July 8, 2021, in which she explained that she felt that she was being penalized for being pregnant. She explained that based

on the employer's negative and discriminatory attitude toward her pregnancy, she feared that she would ultimately lose her job. (Ex. B, Email dated July 8, 2021).

40. The Corporate Defendants did not respond to Ms. Franklin's email. Likewise, Defendants did not investigate or remediate any of the discriminatory conditions Ms. Franklin was experiencing. To the contrary, the discrimination only increased.

41. Ms. Franklin gave birth to a healthy baby on August 23, 2021. Thereafter, she went out on maternity leave for eight (8) weeks.

*Defendants Discriminated Against Ms. Franklin When She Returned from Maternity Leave By Denying Her Leads and Opportunities.*

42. Ms. Franklin returned to work in late November 2021, working four (4) days a week. The fifth workweek day was protected leave to care for her newborn. This was pre-arranged and approved by CEO Lippa.

43. When Ms. Franklin returned from maternity leave, she held the same role as she had held prior to giving birth. Therefore, she expected to maintain the same duties, responsibilities, and privileges of employment. However, her duties and responsibilities had actually been greatly diminished upon return from leave.

44. Specifically, it was Ms. Franklin's understanding, that upon her return to work after maternity leave the splitting of the leads was to remain equal, even though she was taking off on Friday. The plan was that if a lead came in on Friday, Ms. Pfister would send an initial email to the potential buyer and inform them that Ms. Franklin would contact them on Monday morning. In the event that it was an immediate need for a quote, Ms. Pfister was to prepare a quote on Ms. Franklin's behalf and send it through the appropriate channels. This plan was effective for two (2) weeks but then Ms. Franklin stopped receiving leads entirely on Fridays.

45. Ms. Franklin wrote an email to Pagano, and explained that she would be greatly prejudiced, if she missed all Friday leads. She wrote:

> I am wanting to know if something had changed, since the leads I am getting vs. my expectations for selling for the company are not aligning. I was under the impression that the leads that I was assigned on those days that were used as PFL were to be initiated via an email from Laura to the customer for the RFQA and I would just handle anything on Monday.
>
> I am trying my best, to do my best to hit that 19 million dollar goal for both teams as effectively as I can, but when I do not see the leads on predetermined days off that is significantly impacting what opportunities I have to help the team get there. Please understand that this is not a complaint, just want to express my concerns for what I thought was to be happening vs. what is actually happening.
>
> Since my return, all of the customer's that I had previously worked with over my time at GenTech and active pipeline had been re-distributed and I was starting essentially from scratch. PO's that were received from quotes I had done, accounts I had worked for years etc have now transferred to other team members for future follow-ups, PM follow-ups etc. I understand this needed to happen while I was out for maternity leave. I am digging to find new clients and help the sales team as much as possible without the rejection of help that I sometimes get from my team.
>
> I am a good sales person and have worked extremely hard to be good at what I do. I just feel as though at this time, my skills are not being utilized as best as they could be to help us hit that goal.

(Ex. C, Email March 8, 2022).

46. In response, the Defendants claimed that they were not obligated to give Ms. Franklin leads on Fridays since, on that day, she was technically "off." However, Defendants capriciously exploited this "excuse" since the leads could be given to Ms. Franklin's assistant/teammate on her behalf, as told to her upon her return, or could be given to her on any other day of the week. Plainly, taking one day off to care for her newborn child did not justify denying her leads that could be processed on another day of the week, or by an assistant.

47. Moreover, Defendants could have found other ways of accommodating Ms. Franklin's need for leave, while still ensuring that she received an equal number of leads. Notably,

8

Defendants could have instituted a policy whereby Ms. Franklin received double leads on Monday while her colleagues received double leads on other days of the week.

48. The discriminatory treatment became more apparent when in March 2022, all other employees received a cost-of-living adjustment ("COLA") bonus, but Ms. Franklin did not. A meeting related to the COLA bonus was held on a Friday, a date the employer knew Ms. Franklin would be out of the office. By holding this meeting on a day Ms. Franklin could not attend, the Corporate Defendants excluded Ms. Franklin from receiving the bonus.

*Ms. Franklin Is Given The Choice of Demotion or Resignation*

49. Worse still, in March 2022 – approximately four (4) months after returning from maternity leave – Ms. Franklin was demoted to Senior Sales Associate., and her salary was reduced from approximately $100,000.00 to $55,000.00. Ms. Franklin's new role included a 1% commission for sales. The Corporate Defendants gave Ms. Franklin the choice of either accepting the demotion or resigning from her job.

50. In response to this shocking development, Ms. Franklin explained that she was at a severe disadvantage as she was not receiving leads on an equal basis with the other sales representative, and this inequity was affecting her revenue. (Ex. D, Email March 22, 2022). However, the Corporate Defendants were not open to addressing her concerns of discrimination and explained that Ms. Franklin could either accept her demotion or leave the company.

51. Ms. Franklin highlighted the discrepancy in the leads. She showed that since May 2021, prior to her maternity leave, she was receiving significantly less leads than her non-pregnant colleague, Ms. Howell. Likewise, as of November 2021, when she returned form maternity leave, she was receiving significantly less leads than her non-newly-returned-from-leave colleague, Ms.

Howell. The discrepancy in the lead distribution numbers between Ms. Franklin and Ms. Howell is striking:

| Leads After Maternity Leave 11/1/2021 – 3/22/2022 | | | |
| --- | --- | --- | --- |
| | Internally Distributed Leads | Tickets Assigned | Post Quote follow-ups |
| Alexis | 139 | 41 | 406 leads |
| Amanda | 68 | 14 | 149 leads |
| Laura | 62 | 13 | 196 leads |

(Ex. D, Email March 22, 2022).

52. The Corporate Respondent did not respond to this substantive complaint. There was no investigation and no remediation. Ms. Franklin had no choice but to accept the demotion, as she needed the income

53. In Ms. Franklin's new demoted role, the discriminatory practices continued. Many of Ms. Franklin's prior accounts had been assigned to other employees and she was still being denied leads.

54. Specifically, Ms. Franklin was completely removed from the Consumable Project that had been her project from the outset. This involved Ms. Franklin doing research and working with technical service to build up packages to then be placed on website to market to customers. This was referred to as "consumables kit." Ms. Franklin was handling this project exclusivity prior to birth. However, when she returned from maternity leave, she was excluded from the project even though there were still kits that had to be researched.

55. Likewise, Ms. Franklin was excluded from the CRM (customer relationship management) software. This had to be built from scratch and Ms. Franklin was part of the team developing this software. She had been instrumental with this project. However, when Ms.

Franklin returned from maternity leave, she was no longer assigned to this project. Instead, junior associates who were new to the company had replaced her, with no explanation.

56. Further, two (2) of Ms. Franklin's prior accounts has also been reassigned: Horiba and Close Waters. Ms. Franklin anticipated being reintegrated into her prior projects upon her return from leave, but she was denied this opportunity.

57. Ms. Franklin also lost some of the privileges of her prior role. This included participation in trainings and projects that Ms. Franklin held a major position in prior to her pregnancy.

58. Thus, the denial of leads, and with it, growth opportunities, was solely due to discrimination against Ms. Franklin for pregnancy, maternity leave, and for working a reduced schedule thereafter.

59. On or about June 2022, Ms. Franklin advised Defendants that she would need to take additional leave, due to a surgery which was scheduled for July 18, 2022. CEO Lippa berated Ms. Franklin for using all of her leave and said that her need of leave seemed to indicate that she did not want to work.

60. Thereafter, Ms. Franklin felt compelled to resign. It was clear that she no longer had growth opportunities at this company and was experiencing discrimination on a systemic basis, as detailed herein.

61. As no employee should be compelled to work in a discriminatory work environment, Ms. Franklin resigned on or about September 2022.

## FIRST CLAIM
### (Discrimination in Violation of Title VII and the PDA)

62. Plaintiff repeats and realleges the previous allegations as if fully stated herein.

63. The Pregnancy Discrimination Act of 1978, which amended Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., prohibits discrimination forbids discrimination based on pregnancy when it comes to any aspect of employment, including hiring, firing, pay, job assignments, promotions, layoff, training, fringe benefits, such as leave and health insurance, and any other term or condition of employment.

64. The Defendants engaged in an unlawful discriminatory practice by discriminating and retaliating against the Plaintiff because of her pregnancy and motherhood status in violation of Title VII and the PDA by denying Plaintiff the same terms and conditions of employment available to non-pregnant employees.

65. Specifically, Defendants discriminated against Plaintiff by inter alia: i) denying her the opportunity to work in an employment environment free of unlawful discrimination; ii) denying plaintiff leads and accounts that she had previously managed during her pregnancy and when she returned form maternity leave; iii) stripping Plaintiff of career-building opportunities, iv) demoting Plaintiff to a lower role; and v) cutting Plaintiff's salary by 50%.

66. Ultimately, in September 2022, Plaintiff was compelled to resign, as no employee should be compelled to work in a discriminatory work environment.

67. As a direct and proximate result of the unlawful discriminatory conduct committed by Defendants in violation of Title VII and the PDA, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission and other compensation that she was denied due to the discrimination described herein. She has also suffered, and continues to suffer severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

68. Defendants' unlawful and discriminatory actions were done with willful negligence, recklessness, a conscious disregard of the rights of Plaintiff, or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under Title VII and the PDA, so that Plaintiff is entitled to an award of punitive damages.

## SECOND CLAIM
### (Retaliation in Violation of Title VII)

69. Plaintiff repeats and realleges the previous allegations as if fully stated herein.

70. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §§ 2000e-3 by retaliating against Plaintiff for addressing her concerns of Defendants unlawful discriminatory actions.

71. Indeed, Plaintiff complained about discriminatory conduct on multiple occasions. (Exhibit B-D). However, in response, at each juncture, Defendants did not engage in remediation as required by law. Instead, at each juncture, Defendants engaged in retaliation and their discriminatory actions increased. Notably, Defendants continued to deny Plaintiff valuable leads and opportunities, they demoted Plaintiff in March 2022 to a lower role, and they cut her salary by 50%. These decisions were not based on legitimate, non-discriminatory factors.

72. As a direct and proximate result of the unlawful discriminatory conduct committed by Defendants in violation of Title VII and the PDA, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission and other compensation that she was denied due to the discrimination described herein. She has also suffered, and continued to suffer severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

73. Defendants' unlawful and discriminatory actions were done with willful negligence, recklessness, a conscious disregard of the rights of Plaintiff, or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under Title VII and the PDA, so that Plaintiff is entitled to an award of punitive damages.

### THIRD CLAIM
**(Pregnancy Discrimination in Violation of Executive Law § 296 et seq.)**

74. Plaintiff repeats and realleges the previous allegations as if fully stated herein.

75. The NYSHRL prohibits discrimination in the workplace based upon an individual's gender and pregnancy.

76. Plaintiff is an employee covered by the NYSHRL.

77. The Corporate Defendants are employers within the meaning of the NYSHRL.

78. Defendants discriminated against Plaintiff because of her gender and pregnancy by inter alia: i) denying her the opportunity to work in an employment environment free of unlawful discrimination; ii) denying plaintiff leads and accounts that she had previously managed during her pregnancy and when she returned form maternity leave; iii) stripping Plaintiff of career-building opportunities, iv) demoting Plaintiff to a lower role; and v) cutting Plaintiff's salary by 50%.

79. Ultimately, in September 2022, Plaintiff was compelled to resign, as no employee should be compelled to work in a discriminatory work environment.

80. As a direct and proximate result of the unlawful discriminatory conduct committed by Defendants in violation of the NYSHRL, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission and other compensation that she was denied due to the discrimination described herein. She has also suffered, and continues to suffer severe

14

emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

81. Defendants' unlawful and discriminatory actions were done with willful negligence, recklessness, a conscious disregard of the rights of Plaintiff, or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under NYSHRL, so that Plaintiff is entitled to an award of punitive damages.

## FOURTH CLAIM
### (Retaliation in Violation of Executive Law § 296 et seq.)

82. Plaintiff repeats and realleges the previous allegations as if fully stated herein.

83. The NYSHRL prohibits retaliation against employees for complaining about unlawful practices in the workplace.

84. Plaintiff complained about discriminatory conduct on multiple occasions. In response, at each juncture, Defendants did not engage in remediation as required by law. Instead, at each juncture, Defendants engaged in retaliation and their discriminatory actions increased. Notably, Defendants continued to deny Plaintiff valuable leads and opportunities, they demoted Plaintiff in March 2022 to a lower role, and they cut her salary by 50%. These decisions were not based on legitimate, non-discriminatory factors.

85. As a direct and proximate result of the unlawful discriminatory conduct committed by Defendants in violation of the NYSHRL, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission and other compensation that she was denied due to the discrimination described herein. She has also suffered, and continued to suffer severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

86. Defendants' unlawful and discriminatory actions were done with willful negligence, recklessness, a conscious disregard of the rights of Plaintiff, or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under NYSHRL, so that Plaintiff is entitled to an award of punitive damages.

## FIFTH CLAIM
### (Familial Status Discrimination in Violation Of New York Exec. Law § 296)

87. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

88. New York State Human Rights Law ("NYSHRL") prohibits an employer on the basis of an employee's familial status to "discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment." Executive Law § 296(1)(a).

89. Plaintiff is a member of the "familial status" protected class as she is a mother to a small child and also gave birth to a second child on August 23, 2021.

90. The Defendants had notice of Plaintiff's protected familial status.

91. Because of Plaintiff's familial status, she has been subjected to abuse and mistreatment as set forth herein and has been treated differently than other employees. Specifically, Plaintiff was, inter alia: i) denied leads and opportunities upon returning from leave; and then ii) demoted to a lower position several months after returning from leave.

92. Importantly, Defendants could have found other ways of accommodating Ms. Franklin's temporary need for leave on Friday, while still ensuring that she received an equal number of leads.

93. As a consequence of the Defendants' wrongful actions, intentional, negligent, and reckless behavior, and violations of Federal and New York State laws, Plaintiff was subjected to

16

fear, personal humiliation and degradation, and suffered and continues to suffer physical pain and impairment, as well as mental and emotional distress.

94. Plaintiff has suffered and continues to suffer irreparable injury and monetary damages in amount to be determined at trial, as well as punitive damages, costs and attorneys' fees, and other relief this Court may find just and proper.

### SIXTH CLAIM AGAINST YVETTE PAGANO
**(Aiding and Abetting under the NYSHRL)**

95. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

96. New York Executive Law Section 296(6) makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."

97. Pagano aided and abetted the pregnancy discrimination of Plaintiff, by inter alia: i) failing to offer her a reasonable accommodation; ii) demoting her position and cutting her annual salary by 50%.; and iii) retaliating against her for speaking out about the discrimination.

98. Pagano failed to respond meaningfully to any of Ms. Franklin claims for discrimination. Likewise, Pagano failed to respond to Ms. Franklin's repeated requests upon her return from leave, that she be restored the to the same position she had held prior to the pregnancy and birth.

99. As a direct and proximate result of the discriminatory conduct of Ms. Pagano, Plaintiff has suffered mental anguish and humiliation, as well as adverse employment consequences, including loss of future wages, professional opportunities, and other valuable benefits and emoluments of employment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court enters judgment in her favor and against all Defendants, containing the following relief:

1. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New York;

2. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

3. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress, humiliations, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

4. An award of damages to be determined at trial, plus prejudgment interest,;

5. An award of punitive damages;

6. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

7. Such other and further relief as this Court deems just and proper.

Dated: New York, NY
December 22, 2022

_____
Chaya Gourarie, Esq.
Tully Rinckey PLLC
777 Third Ave., 21st. Fl
New York, NY 10017
T: 646-813-2965
cgourarie@tullylegal.com

TO:

Gentech Scientific, LLC
23 Mill Street
Arcade, New York 14009

Conquer Scientific, LLC
c/o CT Corporation System
28 Liberty Street
New York, NY 10005

Purity Scientific, LLC C/O Lakelet Capital, LLC
c/o Lippes Mathias Wexler Friedman LLP
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202

Lakelet Capital, LLC
c/o Lippes Mathias Wexler Friedman LLP
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202

Yvette Pagano C/O Gentech Scientific, LLC
23 Mill Street
Arcade, New York 14009