**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

───────────────────────────

**AMANDA FRANKLIN,**

                                        **Plaintiff,**

**v.**                                                                    **22-CV-1005 JLS(Sr)**

**GENTECH SCIENTIFIC LLC,**
**LAKELET CAPITAL LLC,**
**CONQUEIR SCIENTIFIC LLC,**
**PURITY SCIENTIFIC LLC,**
**and**
**YVETTE PAGANO,**

                                        **Defendants**

───────────────────────────

## REPORT, RECOMMENDATION AND ORDER

This matter was referred to the undersigned by the Hon. John L. Sinatra, pursuant to 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #16.

Plaintiff commenced this action, *pro se*, pursuant to Title VII of the Civil Rights Act of 1994 (Title VII), as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e *et seq.,* and the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law § 290 *et seq*., alleging discrimination and retaliation because of her pregnancy. Dkt. #1.

Currently before the Court is defendant Lakelet Capital LLC's ("Lakelet's"), motion to dismiss the complaint for failure to allege an employer-employee relationship

between plaintiff and Lakelet. Dkt. #11-2. For the following reasons, it is recommended that Lakelet's motion be granted.

## FACTUAL ALLEGATIONS

Plaintiff's complaint alleges that she was employed as Sales Consultant and Team Lead for defendant GenTech Scientific LLC ("GenTech"), and defendant Conquer Scientific LLC ("Conquer"), both of which are held by Lakelet under defendant Purity Scientific LLC ("Purity"). Dkt. #1, ¶¶ 14-16 & 31. Plaintiff alleges that Purity, GenTech and Conquer are "united in interest," citing the websites of Purity and GenTech which state: "Consolidated under Purity Scientific, GenTech and Conquer are now headed by one executive management team and offer a combined inventory and other shared resources to better serve our customers." Dkt. #1, ¶ 20. Plaintiff alleges that her employment duties included tasks for Purity, GenTech, and Conquer and that these entities were "joint employers" to plaintiff. Dkt. #1, ¶¶ 21-22.

Plaintiff identifies defendant Yvette Pagano, the COO of GenTech and Conquer, as her supervisor. Dkt. #1, ¶¶ 25 & 27. Plaintiff identifies Mike Lippa as the CEO of GenTech and Conquer and alleges that he approved a four day work week for plaintiff upon her return to work following maternity leave, but later berated her for using all of her leave. Dkt. #1, ¶¶ 23, 42 & 59. Plaintiff alleges that existing customers were reassigned and that she was denied sales leads, removed from a project she had previously handled exclusively, excluded from the customer relationship management software, denied a cost-of-living adjustment bonus and demoted following her maternity

leave, and attaches to the complaint emails between herself, Yvette Pagano and Mike Lippa setting forth her concerns about her employment during and following her pregnancy. Dkt. #1, ¶¶ 45, 48-49, 53-56; Dkt. #1-2; Dkt. #1-3 & Dkt. #1-4.

### DISCUSSION AND ANALYSIS

In response to Lakelet's motion, plaintiff argues that she has adequately alleged that the defendant corporations are joint employers through her allegations that Lakelet is the management company of Purity, a shell company holding both Gentech and Conquer. Dkt. #18, pp.7-10.  Alternatively, plaintiff argues that Lakelet and Purity are functioning as a single employer. Dkt. #18, pp.11-12. Should the Court disagree, plaintiff requests an opportunity to amend her complaint to include additional details pertaining to Lakelet's control over the terms and conditions of plaintiff's employment and the relationship between Lakelet and Purity. Dkt. #18, pp.12-13.

Lakelet replies that plaintiff's complaint fails to allege any facts that would plausibly suggest that Lakelet had any involvement in the terms and conditions of plaintiff's employment or that it was plaintiff's employer under either the single or joint employer doctrine. Dkt. #20, pp.4-6. Lakelet opposes leave to amend the complaint because plaintiff has failed to proffer any facts that would support a discrimination claim against Lakelet. Dkt. #20, pp.6-7.

To survive a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S.at 679.

In the context of employment discrimination, the complaint need not contain specific facts to establish a *prima facie* case of discrimination, but must allege enough facts to state a claim to relief that is plausible on its face. *Allessi v. N.Y. State Dep't of Corrs & Cmty. Supervision,* 16 F. Supp.3d 221, 226-27 (W.D.N.Y. 2014). However, the elements of a *prima facie* case provide an outline of what is necessary to render plaintiff's claims plausible and may, therefore, be considered in assessing whether there is sufficient factual matter in the complaint which, if true, provides the defendant with fair notice of plaintiff's claim, and the grounds on which it rests. *Kelly v. New York State Office of Mental Health,* 200 F. Supp.3d 378, 389 (E.D.N.Y. 2016).

The existence of an employer-employee relationship is a primary element of both a Title VII and NYSHRL claim. *Brown v. Daikin America Inc*., 756 F.3d 219, 226

(2d Cir. 2014); *Eisenberg v. Advance Relocation & Storage, Inc.,* 237 F.3d 111, 113 (2d Cir. 2000). In assessing the existence of an employer-employee relationship, courts consider a set of non-exhaustive factors derived from the general common law of agency: (1) the hiring party's right to control the manner and means by which the product is accomplished; (2) skill required; (3) sources of the instrumentalities and tools; (4) location of the work; (5) duration of the relationship between the parties; (5) whether the hiring party has the right to assign additional projects to the hired party; (6) the extent of the hired party's discretion over when and how long to work; (7) the method of payment; (8) the hired party's role in hiring and paying assistants; (9) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; (13) and the tax treatment of the hired party. *Felder v. United States Tennis Asoc*., 27 F.4th 834, 843 (2d Cir. 2022), *citing Community for Creative Non-Violence v. Reed*, 490 U.S. 730, 751-52 (1989). Though no single factor is dispositive, the greatest weight is placed upon the extent to which the hiring party controls the manner and means by which the worker completes his or her assigned tasks. *Eisenberg*, 237 F.3d at 114.

There are two recognized doctrines that enable an employee to assert employer liability against an entity that is not formally his or her employer - the single employer doctrine and the joint employer doctrine. *Shiflett v. Scores Holding Co., Inc*., 601 Fed. App'x 28, 30 (2d Cir. 2015). Under the single employer doctrine, nominally separate corporations, including parent and wholly owned subsidiary corporations, can be deemed a single enterprise where there is evidence of: (1) interrelation of

operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Brown*, 756 F.3d at 226; *Popat v. Levy*, 328 F. Supp.3d 106, 118 (W.D.N.Y. 2018). Although no one factor is determinative, control of labor relations is the central concern. *Id.* at 227. Thus, the central question is what entity made the final decisions regarding employment matters related to the person claiming discrimination? *Id.*

Under the joint employer doctrine, an entity other than an employee's formal employer can be held liable where two or more separate legal entities share significant control of the same employee and handle certain aspects of their employer-employee relationship jointly. *Felder*, 27 F.4th at 843; *Shiflett*, 601 Fed. App'x. at 30. Although the Court of Appeals for the Second Circuit has yet to set forth a test for joint employment, courts have considered commonality of hiring, firing, discipline, pay, insurance, records, and supervision. *Popat*, 328 F. Supp.3d at 120, *citing Shifflet*, 601 Fed. App'x. at 30.

In the instant case, plaintiff has proffered no factual allegation that would plausibly suggest that Lakelet was plaintiff's employer or had any control over plaintiff's employment. The factual assertion that Lakelet is the holding company for Purity, which is the holding company for GenTech and Conquer, is wholly insufficient to suggest employer liability against Lakelet. *See Felder*, 27 F.4th at 845-846 (granting motion to dismiss on joint employer theory where plaintiff failed to allege defendant United Tennis Association had any control over his hiring or firing as a security guard or any

involvement in training, supervising, issuing paycheck or providing benefits, equipment or uniform); *Shiflett,* 601 Fed. App'x at 30 (granting summary judgment regarding single and joint employer theories despite evidence of common ownership where there was no evidence that holding company controlled labor relations at nightclub); *Cf. Popat*, 328 F. Supp.3d at 120-21 (denying motion to dismiss joint employer theory where plaintiff alleged that defendant surgical practice determined who participated in medical school's surgical training procedures and how compensation and billing for surgeries would be managed and facilitated); *Brown*, 756 F.3d at 227-28 (denying motion to dismiss under single employer theory where plaintiff alleged that parent company rotated employees between parent and wholly owned subsidiary and that parent corporation's approval was required for all significant actions taken by subsidiary). Accordingly, it is recommended that Lakelet's motion to dismiss be granted. In the absence of a motion to amend the complaint attaching a proposed amended complaint for the Court's consideration, plaintiff's informal request for leave to amend the complaint is not properly before the Court.

## <u>CONCLUSION</u>

For the foregoing reasons, it is recommended that defendant Lakelet's motion to dismiss (Dkt. #11), be granted.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to

comply with the provisions of Rule 72(b) may result in the District Judge's refusal to

consider the objection.


       The Clerk is hereby directed to send a copy of this Report,

Recommendation and Order to the attorneys for the parties.


       **SO ORDERED.**


DATED:      Buffalo, New York
            June 8, 2023

                      **s/ H. Kenneth Schroeder, Jr.**
                      **H. KENNETH SCHROEDER, JR.**
                      **United States Magistrate Judge**